NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MULTICULTURAL RADIO BROADCASTING, INC., <br><br> Plaintiff, <br><br> v. <br><br> KOREAN RADIO BROADCASTING, INC., YOUNG DAE KWON, and DOES 1-100, <br><br> Defendants. | Civil Action No. 15-1961 (SRC) <br><br> **OPINION** |

**CHESLER**, District Judge

This matter comes before the Court on the motion filed by Plaintiff/Counterclaim-Defendant Multicultural Radio Broadcasting, Inc. ("Multicultural Radio") to dismiss the Counterclaim of Defendants/Counterclaimants Korean Radio Broadcasting, Inc. and Young Dae Kwon (together, "KRB"), pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants/Counterclaimants have opposed the motion. For the reasons that follow, the Court will grant the motion in part and deny it in part.

I.   **BACKGROUND**

This case arises from a dispute relating to a lease of radio station airtime. The following factual summary is based on the allegations in the Answer/Counterclaim, which are assumed to be true for purposes of this motion only. KRB is a Korean radio station and broadcasting company that provides 24-hour content. In November 2013, KRB renewed its lease of airtime on WWRU-AM 1660 ("AM 1660") from Multicultural Radio, the owner and operator of the station.

According to KRB, AM 1660 experienced signal and reception problems before and during the term of the renewed lease that interfered with programming. As a result, KRB lost audience and advertising revenue, and began supplementing its broadcasting at night and on the weekends on another radio station.

The Time Brokerage Agreement ("TBA"), which governs the lease, required Multicultural Radio to "maintain the operating power of the Station and . . . repair and maintain the Station's towers and transmitter sites and equipment[.]" (TBA ¶ 12.) The Counterclaim alleges that Multicultural Radio failed to do so. Moreover, during the negotiations of the TBA, Multicultural Radio did not inform KRB that AM 1660 operated under a Special Temporary Authority ("STA") instead of a standard FCC license. A construction project in the vicinity prevented Multicultural Radio from satisfying the licensing requirements. Multicultural Radio also did not disclose that it obtained permits to build one or more antennae. KRB infers that additional construction was necessary because Multicultural Radio could not maintain the operation of the station with existing equipment.

KRB experienced months of braodcasting problems and lodged multiple complaints, but Multicultural Radio did nothing to remedy the continued signal deterioration. Multicultural Radio also refused KRB's requests for a fee reduction. Consequently, KRB decided to transfer its full programming to a 24-hour slot on 87.7 FM. After notifying Multicultural Radio, KRB terminated the TBA on December 31, 2014. However, Plaintiff threatened litigation, and KRB engaged in discussions to return. The parties agreed that Defendant could resume programming on AM 1660 as of February 1, 2015, and KRB notified 87.7 FM of its intent leave. But, on January 22, 2015, Multicultural Radio withdrew its offer because it had found another lessee.

On March 17, 2015, Multicultural Radio filed a Complaint for breach of contract and other claims. KRB counterclaimed for breach of contract, two counts of breach of the implied covenant of good faith and fair dealing, fraudulent inducement, fraud, trademark infringement, and unfair competition. On July 8, 2015, Multicultural Radio moved to dismiss all counts of the Counterclaim for failure to state a claim, and for failure to meet the heightened pleading requirements of Rule 9(b), as to the counts for fraudulent inducement and fraud. In its opposition brief, KRB voluntarily withdrew the claim for trademark infringement.

## II. DISCUSSION

### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides a mechanism by which a party may defeat a counterclaim "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A counterclaim will survive a motion under Rule 12(b)(6) only if it states "sufficient factual allegations, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "A [counterclaim] has facial plausibility when the [defendant] pleads factual content that allows the court to draw the reasonable inference that the [plaintiff] is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Following *Iqbal* and *Twombly*, the Third Circuit has held that, to prevent dismissal of a claim, the counterclaim must show, through the facts alleged, that the defendant is entitled to relief. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). This showing must be made to comply with the basic pleading requirements of Federal Rule of Civil Procedure 8(a). *Id.*

A counterclaim sounding in fraud is subject to the higher pleading standard set by Federal Rule of Civil Procedure 9(b). The rule states: "In alleging fraud or mistake, a party must state with

particularity the circumstances constituting fraud or mistake." As interpreted and applied by the Third Circuit, Rule 9(b) requires "[defendants] to plead 'the who, what, when, where, and how: the first paragraph of any newspaper story.'" *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534 (3d Cir. 1999) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)); *see also Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (holding that Rule 9(b) requires a party alleging fraud to state the circumstances of the alleged fraud "with sufficient particularity to place the [plaintiff] on notice of the 'precise misconduct with which [it is] charged.'" (quoting *Lum v. Bank of America*, 361 F.3d 217, 223-224 (3d Cir. 2004)) (modification in original). Rule 9(b)'s requirements are relaxed in instances where the factual information required to satisfy the rule is solely within the knowledge of the other party. *See In re Rockefeller Ctr. Props. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997)).

On a motion to dismiss, the Court must "accept all factual allegations as true, construe the [counterclaim] in the light most favorable to the [defendant], and then determine whether a reasonable inference may be drawn that the [plaintiff] is liable for the alleged misconduct." *Argueta v. U.S. Immigration and Customs Enforcement*, 643 F.3d 60, 74 (3d Cir. 2011). However, it need not accept a "legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007); *Fowler*, 578 F.3d at 210-11; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a [counterclaim], they must be supported by factual allegations."). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, will not suffice." *Iqbal*, 556 U.S. at 678.

In reviewing a motion to dismiss, pursuant to Rule 12(b)(6), a court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the

complaint, and matters of public record. *Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 259 (3d Cir. 1998).

### B. Count I: Breach of Contract

Count I alleges that Multicultural Radio breached the TBA by failing to provide station maintenance and repair, resulting in signal deterioration. To assert a breach of contract counterclaim under New Jersey law,[1] Defendant must allege the existence of a valid contract, its own performance of contractual duty, defective performance by the Plaintiff in violation of the contract, and damages from the breach. *Frederico*, 507 F.3d at 203 (citing *Video Pipeline, Inc. v. Buena Vista Entm't, Inc.*, 210 F. Supp. 2d 552, 561 (D. N.J. 2002)). Multicultural Radio argues that KRB failed to allege Plaintiff's breach of the TBA, did not establish its own performance, and asserted only uncertain and speculative damages. There is no dispute as to the existence or validity of the TBA.

The Court finds that KRB's breach of contract claim survives a motion to dismiss. KRB sufficiently pled breach by stating that the TBA required Plaintiff to "maintain the operating power of the Station and . . . repair and maintain the Station's towers and transmitter sites and equipment," and that Plaintiff failed to do so. (CC ¶¶ 110-111.)

KRB's allegations also establish that it "complied with and performed its obligations under the TBA." (CC ¶ 109.) The Counterclaim and all reasonable inferences drawn therefrom provides that KRB had been making monthly payments in accordance with the TBA through December 31, 2014, when it terminated the agreement because of default by Multicultural Radio. (CC ¶¶ 97,

---

[1] A federal court sitting in diversity must apply the substantive law of the forum state, unless a federal statute or the Constitution direct otherwise. *Salve Regina College v. Russell*, 499 U.S. 225, 226 (1991) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)); *Lafferty v. St. Riel*, 495 F.3d 72, 76 (3d Cir. 2007). The Court notes that the parties have not raised a choice of law issue as to any of the common law claims asserted in the Counterclaim, and both Plaintiff and Defendant have briefed the claims according to New Jersey law. Accordingly, in reviewing the sufficiency of the claims as pled, the Court applies the law of New Jersey to all claims.

110-11; *see also* TBA ¶ 14.) Multicultural Radio argues that KRB's failure to plead that it gave written notice in the method required by the TBA should be fatal to Defendant's claim. Plaintiff is wrong. KRB asserts that it provided multiple notifications of deficiencies. The adequacy of notice is a defense, not a pleading requirement.

Finally, KRB sufficiently alleged damages. KRB contends that, among other consequences, the signal problems interrupted programming, resulted in a loss of listeners and advertising revenue, and forced KRB to pay for supplemental airtime on another radio station. These harms are plausibly within the ambit of "natural and probable consequences" stemming from Multicultural Radio's breach. *See Pickett v. Lloyd's*, 131 N.J. 457, 474 (N.J. 1993). In arguing that Defendant's assertions are "purely speculative" or "uncertain," Multicultural Radio effectively demands KRB to offer its proofs at the pleadings stage. This is not required. Accordingly, the Court will deny Multicultural Radio's motion to dismiss as to Count I of the Counterclaim.

### C. Counts II and III: Breach of the Implied Covenant of Good Faith and Fair Dealing

Count II asserts that Plaintiff breached the implied covenant of good faith and fair dealing because, during renewal negotiations, Plaintiff did not disclose that AM 1660 operated under an STA, and the reasons necessitating the STA; or that Multicultural Radio applied for construction permits to build at least one antenna "due to [AM 1660's] broadcasting issues." (CC ¶¶ 114-116.) These allegations do not give rise to a cognizable breach of implied covenant claim.

New Jersey law holds that every contract contains an implied covenant of good faith and fair dealing in the performance and enforcement of the contract's terms. *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 244 (N.J. 2001). "A party to a contract breaches the covenant if it acts in bad faith or engages in some other form of inequitable conduct in the performance of a contractual

obligation." *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 288 (3d Cir. 2000). The covenant operates to ensure that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract[.]" *Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396, 420 (N.J. 1997).

As a threshold matter, a claim for breach of the implied covenant of good faith and fair dealing can only follow where there is a contract to create the expectation of a benefit. "In the absence of a contract, there can be no breach of an implied covenant[.]" *Wade v. Kessler Inst.*, 172 N.J. 327, 345 (N.J. 2002) (quoting *Noye v. Hoffmann–La Roche Inc.*, 238 N.J. Super. 430, 434 (N.J. Super. Ct. App. Div. 1990)). Because KRB's allegations relate to conduct that predates the TBA, they cannot sustain a breach of implied covenant claim. Therefore, Count II will be dismissed with prejudice.

Count III also fails because the alleged misconduct does not relate to any discernable contract. In short, Count III pleads that, after KRB ceased broadcasting on AM 1660, Multicultural Radio offered Defendant an opportunity to resume programming in order to avoid litigation, but then withdrew its offer and instead leased the station to another broadcaster. (CC ¶¶ 124-125.) These acts are not connected to any obligation under the TBA. KRB also does not plead that its right to return arose pursuant to another agreement with Multicultural Radio. Although words like "offer" and "acceptance" evoke the aura of contract formation, the claim alleges no facts that would support the creation of any subsequent agreement between the parties.

Even if a contract for KRB's return existed, it would not save Defendant's claim, which effectively alleges that Multicultural Radio did not perform as agreed. This is the essence of a breach of contract allegation. Breach of implied covenant, on the other hand, arises when a party has acted consistently with the contract's literal terms, but has done so in such a manner as to

"have the effect of destroying or injuring the right of the other party to receive the fruits of the contract[.]" *Wade*, 172 N.J. at 344-45 (quoting *Bak-A-Lum Corp. v. Alcoa Bldg. Prod.*, 69 N.J. 123, 129 (N.J. 1976)).  Because no set of facts can support a breach of covenant claim arising out of Multicultural Radio's withdrawal of its offer for KRB to return, Count III will also be dismissed with prejudice.

### D.  Count IV: Fraudulent Inducement

KRB alleges that Multicultural Radio is liable for fraudulent inducement because it did not disclose the station's operation under an STA, or the acquisition of construction permits.  KRB's counterclaim does not satisfy the pleading demands of Rule 9(b).

To assert an actionable fraud in the inducement counterclaim, a defendant must plead the following elements: "a material representation of a presently existing or past fact, made with knowledge of its falsity and with the intention that the other party rely thereon, resulting in reliance by that party to his detriment." *Jewish Ctr. of Sussex Cnty. v. Whale*, 86 N.J. 619, 624 (N.J. 1981).  Nondisclosure may also constitute fraud, but only when there is a duty to speak. *Baldasarre v. Butler*, 254 N.J. Super. 502, 521 (N.J. Super. Ct. App. Div. 1992), *aff'd in part, rev'd in part,* 132 N.J. 278 (N.J. 1993).

KRB's allegations fall short of establishing the required elements.  To start, KRB's Counterclaim alleges nondisclosure, yet, is devoid of facts to indicate that a duty to disclose the omitted information existed in what otherwise appears to be an arm's-length contractual relationship.

The remaining elements fare no better.  KRB must show a material omission.  KRB pleads that

> 129.   Plaintiff/Counter-Defendant . . . fail[ed] to disclose that WWRU-AM 1660 was operating under an STA because obtaining a

>license for operation from the FCC was not possible at the time the TBA was signed . . . .
>131. Further, Plaintiff/Counter-Defendant knowingly failed to disclose its obtaining construction permits for one or more antenna due to WWRU-AM 1660's broadcasting issues.
>132. Plaintiff/Counter-Defendant knowingly failed to disclose to KRB the reasons behind the increased and continuous weakening and diminishment of WWRU-AM 1660's signal prior to entering the TBA.

These allegations fail to explain precisely what information was omitted or its relevance to the harm alleged. Obscure mention of "reasons" for weakening radio signal, or "broadcasting issues," whatever those may be; and failure to explain how these, or the operation under an STA, impacted signal strength or station operation, does not state the circumstances of the alleged fraud with sufficient particularity. Since the nature of the underlying fraudulent misconduct is unclear, there can be no finding of fraudulent intent.

Finally, KRB pleads no facts to support justifiable reliance on its assumptions about the station's licensing status and/or the absence of plans for future construction. In fact, KRB's own assertion that "there were no other radio stations that offered available slots for KRB's full programming" when the TBA was signed (CC ¶ 78), belies its claim that it would not have entered into the TBA if full disclosure had been provided. As such, Defendant has not successfully asserted a fraudulent inducement counterclaim against the Plaintiff, and Count IV will be dismissed without prejudice.[2]

---

[2] Multicultural Radio also argues that the fraudulent inducement counterclaim should be dismissed because it is barred by New Jersey's economic loss doctrine and the parol evidence rule. The New Jersey economic loss doctrine bars a party from using a tort theory of relief to recover economic losses to which the party's entitlement flows only from a contract. *Alloway v. Gen. Marine Indus., L.P.,* 149 N.J. 620, 627 (N.J. 1997). However, the economic loss doctrine does not apply to statements extrinsic to the performance of the contract. *Capitalplus Equity, LLC v. Prismatic Dev. Corp.,* Civ. No. 7–321, 2008 WL 2783339, at *6 (D. N.J. July 16, 2008). Misrepresentations made by the promisor at the time of contracting, which induce the promisee to enter into the contract are generally extrinsic to the underlying contract. *See Bracco Diagnostics, Inc. v. Bergen Brunswig Durg Co.,* 226 F. Supp. 2d 557, 563 (D. N.J. 2002). Thus, fraud in the inducement claims are typically not barred by the economic loss doctrine.

Similarly, the parol evidence rule, which "operates to prohibit the introduction of oral promises to alter or vary an integrated written agreement," *Filmlife, Inc. v. Mal "Z" Ena, Inc.*, 251 N.J. Super. 570, 573 (N.J. Super. Ct. App. Div. 1991), does not "create an absolute defense or prevent the introduction of parol evidence in an action based

### E. Count V: Fraud

Count V alleges fraud, although precisely what conduct gives rise to the claim is unclear. The Court will consider the possibilities that could have been intended by the pleading. KRB avers that

> 139. Plaintiff/Counter-Defendant falsely promised to KRB that it could return to WWRU-AM 1660 in order to avoid litigation. . . .
> 142. Shortly after KRB accepted the offer to return to WWRU-AM 1660, Plaintiff/Counter-Defendant rescinded its offer and KRB's acceptance and replaced KRB with K Radio.
> 143. The offer to KRB was a false promise because Plaintiff/Counter-Defendant did not intend to honor it.

If the alleged fraud lies in Plaintiff's rescission of the offer to return, there can be no viable cause of action for fraud because the need for a contract puts KRB in a catch-22. If no contract provided for KRB to resume programming on AM 1660, (KRB does not plead that an agreement existed), then KRB has no basis to assert reliance on any offer to return. Without justifiable reliance, there can be no cause of action for fraud. *See Jewish Ctr. of Sussex Cnty*, 86 N.J. at 624. However, if a contract existed, then a fraud claim effectively alleging non-performance of a contract is barred by the economic loss doctrine. *See G & F Graphic Servs., Inc. v. Graphic Innovators, Inc.*, 18 F. Supp. 3d 583, 588-89 (D. N.J. 2014).

If, on the other hand, the alleged misconduct is in the making of a promise that Plaintiff did not intent to fulfill, then a claim in fraudulent inducement, although deficient in its current iteration, stands a chance. KRB is cautioned that it would have to plead the existence of a contract, and then include specific facts to support its conclusion that Multicultural Radio never intended to

---

on fraud in the inducement to contract." *Ocean Cape Hotel Corp. v. Masefield Corp.*, 63 N.J. Super. 369, 377-78 (N.J. Super. Ct. App. Div. 1960).

KRB alleges fraud in the inducement based on conduct that predated TBA formation, and appears to be extrinsic to the contract, precluding defenses based on the economic loss doctrine or parol evidence rule. However, because the claim is inadequately pled, the Court need not resolve these issues at this time.

honor its promise at the time the representations were made. Mere evidence of nonperformance will not suffice. *See Luscko v. S. Container Corp.*, 408 F. App'x 631, 635 (3d Cir. 2010). Count V is thus dismissed without prejudice.

### F. Count VI: Trademark Infringement

KRB voluntarily dismissed the counterclaim for trademark infringement – a correct decision in as much as the Counterclaim alleges absolutely no facts which support this claim. It merely contains surmise and legal conclusions. As such, Count VI is dismissed without prejudice.

### G. Count VII: Unfair Competition

KRB asserts a counterclaim for unfair competition based on the conduct of K Radio – the broadcasting company that leased AM 1660 after Multicultural Radio rescinded its offer for KRB to return. According to KRB, K Radio was founded by Defendant's former employees, who used KRB's confidential information, trade secrets, and funds in creating the company. The former employees also used KRB's name and brand in representing themselves to advertisers and promoters, and otherwise held themselves out as KRB. As to Multicultural Radio, KRB says nothing more than Plaintiff, as "owner" and "controller" of AM 1660, "allowed," "encouraged," and "profited from" the unfair competition by K Radio. (CC ¶¶ 162-163.) These allegations set forth no facts whatsoever to illustrate any wrongdoing by Multicultural Radio, and thus fail under *Iqbal/Twombly*. Therefore, Count VII of the Counterclaim will be dismissed without prejudice.

## III. CONCLUSION

For the foregoing reasons, the Court will deny Plaintiff's motion to dismiss as to Count I for breach of contract. The Court will grant Plaintiff's motion as to the remaining Counts. Counts IV, V, VI, and VII for fraudulent inducement, fraud, trademark infringement, and unfair competition, respectively, will be dismissed without prejudice. Counts II and III for breach of the

implied covenant of good faith and fair dealing will be dismissed with prejudice.  An appropriate Order will be filed.

                                                           s/ Stanley R. Chesler  
                                             STANLEY R. CHESLER  
                                           United States District Judge

Dated: November 20, 2015